MOORE v. DAVIDSON.

1. The personal estate is the primary fund for the payment of debts and legacies, but a testator may make both or either a charge upon real estate devised.

2. Where a testator bequeathed to his three sons, in trust for the use and benefit of his three granddaughters, each $10,000, when they arrive at the age of eighteen years, and willed and bequeathed "(my debts being paid) the remainder of my property, both real and personal, to my three sons, to be equally divided amongst them," and appointed his said sons his executors, the legacies to the granddaughters were made a charge upon the real estate devised.

3. Two of the sons having conveyed to the third their interest in the lands devised, in consideration (in part) of liabilities of the estate assumed by the grantee : *Held*, under the facts of the case, that the liabilities so assumed were not intended to include these legacies.
4. The judgment in the case of *Davidson* v. *Moore*, 14 *S. C.*, 251, held that the legacies were a charge upon the real estate devised ; and that question is therefore *res adjudicata.*
5. Where a Circuit decree ascertains a balance in an executor's hands based upon a charge of the real estate as assets of the estate, and from this decree no appeal is taken, the question is finally determined as to such executor, and also as to his judgment creditors.
6. The executor having been charged in his accounting with the value of the real estate devised, and thus a balance ascertained out of which the legacies (in part) were payable, he did not thereby become the purchaser for value of such real estate until he made payment of this balance.
7. The executor cannot claim to be reimbursed for debts of the estate paid by him, where the decree has ascertained a balance due by him individually, and to that extent has charged him with a *devastavit.*

Before HUDSON, J., York, July, 1883.

The opinion fully states the case, but see also *Davidson* v. *Moore*, 14 *S. C.*, 251. The Circuit decree was as follows, omitting its statement of facts :

The positions taken by the plaintiffs in the complaint, and urged before the referee, are substantially these, viz.: First, that the devise to the three sons in the residuary clause of the will is specific, and is in no way charged with the payment of three legacies of $10,000 each to testator's granddaughters, two of whom are Mrs. Davidson and Mrs. Fickling. Second, that should it be decided that this residuary devise is so charged with the payment of these legacies, nevertheless the devise in the hands of its present sole owner, S. R. Moore, cannot be sold to pay said legacies until the said executor, S. R. Moore, should first be refunded the large amount of money which he has advanced from his personal funds in paying debts of the testator ; that he has an equity to be subrogated to the rights of the creditors whose claims he has paid, and to that extent must be preferred to the said legatees out of the proceeds of this land, if sold. On the part of the legatees it is contended that the first

position of the plaintiffs is untenable in law, and the second not founded in fact, and that the conveyance of William A. Moore and Theodore A. Moore to Samuel R. Moore, of May, 1877, and the judgment of Theodore A. against Samuel R. Moore, of September, 1877, are fraudulent and void.

On May 23, 1883, the referee (Patterson) filed his report and with it the testimony, to which said report and testimony reference must be had for the facts of the case in detail. The referee found against the plaintiffs on their positions, and for the legatees, in holding that the legacies are ·a charge upon the real estate, and take precedence of the judgments against S. R. Moore by Theodore A. Moore and J. F. Wallace, both of which are valid. On exceptions to this report by the plaintiffs, the cause came on before me for full hearing. The legatees (defendants) do not except.

We will direct our attention to the first position of the plaintiffs taken before the referee and renewed here. An examination of the will of John S. Moore and of the opinion of our late Court of Appeals in *Laurens* v. *Read* (14 *Rich. Eq.*, 245–270) will readily convince any one that the will of Margaret H. Laurens in that case gives the rule for the construction of the will of John S. Moore in this case, unless the act of 1858 (12 *Stat.*, 700) has the effect, as is intimated by Justice Wardlaw, to convert a residuary devise in a will of a testator, dying after that date, from a specific to a general devise.

The case of *Laurens* v. *Read* is so full to the point, and the authorities so learnedly examined, that I do not deem it necessary to do more than to refer to that case as conclusive of this, unless we are driven by the act of 1858 to a different rule of construction. In that case the testator died before the act, but in our case the will being made before the act, the testator died after the act, but betwixt the making of his will and his death acquired no additional real estate whatever. The act therefore has no application, unless it has the effect in all cases to change a residuary devise from what was specific before the act into a general devise, or one not specific. The point was not involved in that case, because the act had no application, nor is the point decided. There is an intimation in the opening of the opinion

of the court that such is the effect. But at most this· is a mere *obiter dictum* of the judge delivering the opinion, and is not of binding authority.

The question, so far as I am informed, has never been directly raised nor decided by our Supreme Court, and I shall deal with it as *res integra.* Both in England and America devises of real estate, whether by description or in the residuum, have been uniformly treated as specific. Our courts have borrowed their rules of construction from the courts of the mother country in interpreting wills generally, and especially in this particular. Now, under the 24th section of the English wills act (1 *Vic.*, ch. 26)— which makes the will speak as if it had been made immediately before the death of the testator, and is, therefore, in effect, the same as our own act of 1858—residuary devises of land are held to be specific. *Hausman* v. *Fryer, Law Rep.*, 3 *Ch. Ap.*, 420 ; *Gibbons* v. *Eyden, Law Rep.*, 7 *Eq. Ca.*, 374. See note by reporter to *Laurens* v. *Read.*

I learn from a full note on page 450 of 3rd *Jarman on Wills* (5th Am. from 4th Lond. edit.) that at first the courts of England were inclined to take the same view as to the effect on a residuary devise of this wills act, as Judge Wardlaw intimates concerning our act of 1858. But this view was, after some conflict of decisions, abandoned, and it was the settled rule of construction in the courts of England that residuary devises are as well specific since as they were before the act. With this view we concur, as being more in accord ·with reason and principle, founded in the very nature of real as contra-distinguished from personal estate.

The land embraced in the residuary clause of a will is ordinarily as well defined, as fixed, as certain in the mind of the testator, as tracts specifically named in specific devises; especially when, as in this case, no additions are made by purchase or descent cast. Even when additions are made to it after the publication of a will, still the whole is by no means of that undefined, changing, variable character as is personal estate. Wherefore we see no valid reason, since the act of 1858, to depart from that wise and wholesome rule of construction .that prevailed before; and we hold that the devise in the residuary clause of

John S. Moore's will is specific, and not chargeable with the payment of the legacies to Mrs. Davidson and Mrs. Fickling.

Now, as to the plaintiffs' second ground, to wit: That, having advanced money out of his private funds towards the payment of the testator's debts, Samuel R. Moore, the executor, is entitled to be subrogated to the rights of the creditors to the extent of the funds so expended. The defendants concede the correctness of the equity, but deny the fact of the outlay. One thing clearly appears from the accounts of the executor as stated by the referee, and that is that he has been charged with the entire value of this real estate. It was appraised at $17,600, and the evidence shows this sum to cover its fair value. Charging him with this sum in the accounts, and with all other moneys received and goods converted, and giving him credit for all payments and disbursements made, the referee finds a balance against him of a little more than $7,000 in favor of the legatees jointly, viz., in favor of Mrs. Davidson $1,985.53, and in favor of Mrs. Fickling $5,194.14.

Under this method of accounting, S. R. Moore has been made to pay the estate of John S. Moore in full for this land. Clearly, then, it cannot be still regarded as the property of that estate so as to be subject to the satisfaction of the judgments of these legatees. It is so liable, but as the property of S. R. Moore, and not of the estate. In levying on it, therefore, these legatees must treat it as his property, and their liens take rank, among the other judgments against S. R. Moore, according to date; and hence the judgments of Theodore A. Moore and J. F. Wallace must take precedence of these legatees, being four years older.

The findings and conclusions of the referee against the plaintiffs on the two main points herein noticed are overruled; and his finding that the conveyance by Theodore A. Moore and W. A. Moore of their shares in the residuary devise of S. R. Moore is valid, and that the judgment of Theodore A. Moore against S. R. Moore is not fraudulent, not having been excepted to, and being sustained by the proof, is affirmed.

It is therefore ordered, adjudged, and decreed that the residuary devise in the will of J. S. Moore is specific, and not chargeable with the payment of the pecuniary legacies in the first clause of

said will, given in trust for the testator's three granddaughters, two of whom are Mrs. Davidson and Mrs. Fickling. It is further adjudged that the said last named legatees, defendants to this action, and R. H. Glenn, as sheriff of York County, be perpetually enjoined and restrained from levying upon and selling said land as other than the individual property of Samuel R. Moore, liable to the payment of his judgment debts in the order of priority as fixed by law. It is further ordered and adjudged that the said defendants, Laura B. Davidson and Buena V. Fickling, do pay the costs of this action.

From the foregoing decree the defendants duly appealed upon the following exceptions:

1. For that his honor held that the interpretation of the will of Margaret H. Laurens, in the case of *Laurens* v. *Read* (14 *Rich. Eq.*, 245–270), gives the rule for the construction of the will of John S. Moore in this case, unless the act of 1858 (12 *Stat.*, 700) has the effect to convert a residuary devise in a will of a testator dying after that date from a specific to a general devise; and that such act has no such effect in cases where the will of the testator was made before the passage of the act, and testator died after the passage of the act.

2. Because his honor held that residuary devises are as well specific since as they were before the passage of the act of 1858.

3. Because his honor held that the devise in the residuum of John S. Moore's will is specific, and not chargeable with the payment of the legacies to Mrs. Davidson and Mrs. Fickling.

4. For that his honor held that under the method of accounting adopted by the referee, S. R. Moore has been made to pay the estate of testator in full for the real estate; and that the same cannot still be regarded as the property of the estate so as to be subject to the satisfaction of the judgments of Mrs. Davidson and Mrs. Fickling.

5. For that his honor held that in levying on said real estate, Mrs. Davidson and Mrs. Fickling must treat the real estate as the property of S. R. Moore; and their liens must take rank among the other judgments against S. R. Moore, according to date.

6. For that his honor overruled the findings and conclusions of the referee herein against the plaintiffs.

7. For that his honor ordered, adjudged, and decreed that the residuary devise in the will of J. S. Moore is specific, and not chargeable with the payment of the pecuniary legacies in the first clause of said will, given in trust for the testator's three granddaughters, two of whom are Mrs. Davidson and Mrs. Fickling.

8. For that his honor erred in virtually holding that the account taken by the referee to ascertain the value of the estate, real and personal, of the testator, which furnished the assets, real and personal, which were subject to the provisions of the will, was an accounting by the executor of his administration of the estate.

9. For that his honor did not hold that the real estate was a real asset, subject to the provisions of the will, until the legacies and debts were paid.

10. For that his honor held that the real estate had become the private property of S. R. Moore before the debts and legacies had been paid.

11. For that his honor so construed the will of J. S. Moore, and so gave effect to the acts of those named as executors and trustees under said will, as to enable them to defeat the trusts created by the will.

12. For that his honor adjudged that the defendants be perpetually enjoined and restrained from levying upon and selling said land as other than the personal property of S. R. Moore, liable to the payment of his judgment debts in the order of priority as fixed by law.

*Messrs. Hart & Hart* and *James H. Rion,* for appellants.

*Messrs. Wilson & Wilson,* contra.

December 18, 1884. The opinion of the court was delivered by

MR. JUSTICE McIVER. On September 21, 1859, John S. Moore departed this life, having duly made and executed his last will and testament, bearing date January 7, 1858. The terms of his will are as follows: "1st. I will and bequeath to my sons,

Theodore A., Samuel R., and William A. Moore, in trust for the use and benefit of my granddaughters, Amanda J. Springs, Laura B. Springs, and Buena V. Springs, each ten thousand dollars, when they arrive at the age of eighteen years old, for and during their natural lives, and should either of them die, then to her issue; but if either die leaving no issue alive, then to her surviving sisters, my granddaughter, Margaret Lyon, being one of them, or their surviving issue for ever; but if all my said granddaughters die leaving no issue alive, then to revert back to my estate, and be equally divided amongst my sons. My sons, trustees as aforesaid, may, if they deem it necessary and prudent, vest the above legacies in stocks or other property for the use of my said granddaughters severally, but the property so obtained to be held by said trustees upon and subject to the same terms and conditions aforesaid. 2d. I will and bequeath (my debts being paid) the remainder of my property, both real and personal, to my sons, Theodore A., Samuel R., and William A. Moore, to be equally divided amongst them; and I hereby appoint my said sons my executors."

Of the persons named as executors, Samuel R. Moore alone qualified as such, and under proceedings commenced against him in 1876, by the appellants, Davidson and wife and Fickling and wife, to recover the legacies given by the will to these ladies, Judge Aldrich, on June 30, 1881, rendered judgment against the said Samuel R. Moore, individually as well as executor as aforesaid, for the balances due on said legacies.

On May 9, 1877, two of the sons of the testator, Theodore A. and William A., residuary devisees under the will, conveyed to their brother, S. R. Moore, the other residuary devisee, their interest in the real estate so devised to the three sons. The deed by which this conveyance was made recites that "it was agreed in 1863, that in consideration of the said S. R. Moore advancing certain sums of money and assuming certain liabilities on account of the estate of the said John S. Moore, deceased, the real estate of the said deceased, hereinafter mentioned, should be vested in the said S. R. Moore absolutely in fee simple"; and the considerations mentioned in the deed are: "the large sums of money heretofore advanced by S. R. Moore to pay the indebtedness of the

estate of John S. Moore, and liabilities of said estate assumed by the said S. R. Moore, and the sum of three dollars."

On August 31, 1877, the respondents, T. A. Moore and J. F. Wallace, entered judgments against the said Samuel R. Moore individually, and not as executor, for large sums of money, and under the executions issued upon these judgments the sheriff levied upon all the property of S. R. Moore, including the real estate devised by his father's will, and advertised the same for sale on the first Monday in November, 1881, as the property of said S. R. Moore. In the meantime, under the executions issued on the judgments recovered by the appellants, Davidson and wife and Fickling and wife, against S. R. Moore, as executor of John S. Moore, deceased, the sheriff had levied on the real estate devised by the will of said John S. Moore, and advertised the same for sale on the first Monday in November, 1881, as the property of John S. Moore, deceased.

Thereupon this action was commenced for the purpose of perpetually enjoining said appellants from selling the said devised real estate as the property of John S. Moore, deceased, or failing in that, to enjoin them from so doing until an account can be taken and decree made for the amount due S. R. Moore for advances made for said estate, and for what sum he is entitled to reimbursement as a prior charge to the judgments of said appellants. The Circuit judge held that the devise was specific and not chargeable with the payment of the pecuniary legacies to the appellants, and that S. R. Moore having accounted fully for the value of the land, it could no longer be considered as part of the estate of said John S. Moore. He therefore granted the injunction asked for. From this judgment Davidson and wife and Fickling and wife appeal on various grounds set out in the record.

The main questions raised by the appeal are, *first,* whether the legacies in question were charged upon the real estate devised; and *second,* if so, whether, in his accounting, S. R. Moore has been made to pay the estate of John S. Moore the full value of said real estate and thus acquired an absolute right thereto. *Third,* if the legacies are a charge upon the real estate, whether S. R. Moore is not entitled by subrogation first to be reimbursed

amounts advanced by him for the purpose of paying the debts of the testator.

There is no doubt that the primary fund for the payment of debts and legacies is the personal estate, but there is as little doubt that a testator, if so minded, may make both or either a charge upon real estate devised. It is true that the rule is that such intention must appear either from the express words of the will or must be clearly inferrible from the language therein used. *Kirkpatrick* v. *Chesnut*, 5 *S. C.*, 216; *Wright* v. *Denn*, 10 *Wheat.*, 229. It is a question of intention to be solved by a consideration of the terms of the will, and if the intention to charge the real estate appears by the express terms used, or is clearly implied by such terms, such intention must be carried into effect, otherwise the general rule must prevail.

Now, as we think the language used by the testator in the will under consideration clearly implied an intention on his part to charge his entire estate, both real and personal, with the payment of the legacies to his granddaughters, we do not deem it necessary to enter into a consideration of the question whether the act of 1858, 12 *Stat.*, 701 (which clearly applies to this case, the testator having died subsequent to the passage of the act, although the will was executed some time before. *Bell* v. *Towell*, 18 *S. C.*, 94), has had the effect of changing the rule by which it was held that all devises were specific, by removing the reason for such rule as given by Mr. Jarman in his work on wills (vol. 1, p. 595); or whether the fact stated in the Circuit decree, that the testator acquired no real estate between the time of the making of his will and the time of his death, would affect the question of the applicability of the act of 1858.

For even if it be conceded that the residuary devise here in question should be regarded as specific, we think that the terms of the will clearly show that the intention of the testator was that the legacies should be paid at all events, thus constituting them a charge upon the whole estate, both real and personal. It will be observed that there are but two general dispositions of his estate made by the testator: first, the legacies of specific amounts of money to each of his three granddaughters; second, all the remainder of his estate to his sons. There is not even any pro-

vision for debts, except incidentally.   The intention of the testator as expressly declared is, first, that each of the three granddaughters is to have a certain specific sum of money, and all that is given to the sons is what may remain of his estate, out of which remainder his debts are to be paid.   In other words, he gives nothing to his sons except what remains, after the legacies are taken out and after his debts are paid.

It is absolutely certain that the intention was that the sons should only have the *remainder* of his property.   Now that word necessarily implies that *something* was to be previously taken from the estate.   What was that something?   There was no previous devise or bequest, except of the legacies to the granddaughters, and therefore there could have been nothing to be taken from the estate, except the legacies.   The rather peculiar manner in which the testator provided for the payment of his debts negatives the idea that he had reference to them only in the use of the word remainder; and besides, if *everything* that remained after the payment of the debts was to go to the sons, then there would be no fund out of which the legacies were to be paid.

Nor is there any warrant for applying the term remainder to the personal estate alone.   It is true that, in the absence of any direction to the contrary, the legacies, as well as the debts, would be payable out of the personal estate, and the testator must be presumed to have known that this was the law; but, notwithstanding this, having, as he did have, the right to make other provision 'for the payment of the debts and legacies, what did he do?   He made no distinction whatever between his real and personal estate; but, on the contrary, blended it into one common mass and gave it, or rather what remained of it, after the payment of the legacies and debts, to his sons.   His language is: "I will and bequeath (my debts being paid) the remainder of my property, *both real and personal*, to my sons."   Where is the warrant for confining the term remainder to the personal property only?   The testator has not done so, but, on the contrary, according to the strict grammatical construction, the term remainder applies equally to the real as well as to the personal property.   The testator does not content himself with saying simply "the

remainder of my property," but, as if his purpose was to express his intention more fully, he adds the words "both real and personal." So far from saying the remainder of my *personal* property and all my real estate, he uses language showing that he intended to apply the term remainder to both kinds of property. It was as if he had said: "When I say remainder of my property, I mean the remainder of both my real and personal property."

Now if, as we have shown, the term remainder applies as well to the real as to the personal property, and if, as the will shows, there was no preceding devise of real estate, it follows necessarily that the sons could only take what remained of the estate after the debts and legacies were paid. When we look to the circumstances surrounding the testator, both when he made his will and when he died, we are unable to perceive anything unnatural or unreasonable in the construction which we have arrived at. It is conceded that the testator, at the time he made his will and up to the time of his death, was possessed of a very large estate, amply sufficient to pay the debts and legacies and leave a very handsome residue for the sons. It was quite natural, therefore, for him to determine that, as there would be a large estate for his sons, after making provision for his granddaughters, the best mode of effecting his purpose would be to give to his sons the whole of his estate which would remain after provision was made for his debts and legacies to the granddaughters, especially as the sons were to be their trustees. If the results of a disastrous civil war, which was not probably anticipated by the testator, or other unforeseen causes, have defeated his plans, it only adds another to the many instances in which human foresight has proved itself incapable of foretelling the future.

Inasmuch as the intention of the testator, as gathered from the words he has used, is the controlling rule in the construction of a will, and inasmuch as it is seldom the case that the same language is used in any two wills, it is often difficult, if not impossible, to find cases precisely in point. General rules may be found which afford aid in arriving at the proper construction to be given to the language of a testator, and for this purpose it is always well to consult the authorities. An examination of the numerous cases cited in the argument will show that the conclu-

sion at which we have arrived is not in conflict with any well-settled principle, but, on the contrary, is well sustained by authority. In *Laurens* v. *Read*, 14 *Rich. Eq.*, 245, Mr. Justice Wardlaw has collected and reviewed the authorities upon the subject. He arranges the cases in which lands devised have been charged with the payment of legacies under six heads; and we think the case now under consideration falls under his third and fourth heads, for the terms and conditions upon which the legacies are given plainly imply that they are to be paid by the executors, and the real estate is devised to them. So also, as we have said, the testator has blended the real and personal estate together as one mass, and that mass is the only fund out of which the legacies could be paid.

It is true that Wardlaw, J., in the case of *Laurens* v. *Read*, held that, under the terms of that will, which it is claimed is very much like Moore's, the pecuniary legacies did not constitute a charge upon the real estate, yet there is at least one material and vital distinction between that case and the one we are now considering. In the will of Mrs. Laurens there was no devise to the executors, while in Moore's will there is. It is true that in the Laurens will the residue was bequeathed and devised to the same persons as those who were named as executors, but the devise was not to them in their own right, but as trustees, without any power to sell, and this circumstance seems to be strongly relied upon by Judge Wardlaw, because the devise being to them as trustees, *without the power to sell*, they had no means of applying the real estate to the payment of the legacies. But this difficulty would not arise where, as in our case, the devise is to the executors absolutely in their own right. We think, too, that the authorities cited in 3 *Jarman on Wills* (edit. of 1881, by Randolph & Talcott), 422 and note 10, 427 and note 14, and 429, especially the case of *Greville* v. *Browne*, 7 *H. L. Cas.*, 689, fully sustain our view. See also *Knotts* v. *Bailey*, 54 *Miss.*, 235.

We do not think that the position taken by one of the counsel for the appellants, based upon the terms of the recital and the consideration stated in the deed from Theodore A. and William A. Moore to Samuel R. Moore, can be maintained. The "lia-

bilities" there referred to could not have been intended by the parties to that deed to embrace the legacies, because some time prior to that time the executor had, as he supposed, made ample provision for the legacies by setting apart certain notes for that purpose, as appears by the record in the previous case of *David-son* v. *Moore,* 14 *S. C.,* 251, which the parties in this case agreed might be used here. It is true that in that case it was eventually determined that these so-called investments of the said legacies could not be sustained by the court, but still, at the time the deed above referred to was made, the executor was stoutly contending that the legacies had been thus fully provided for, and therefore we do not think that the term "liabilities" used in that deed could have been intended to embrace the legacies.

But we think there is much force in another of his positions, that the respondent, S. R. Moore, is estopped by the judgment in the former case of *Davidson* v. *Moore, supra,* from raising the question whether the legacies constitute a charge upon the real estate. In that case the Circuit judge held that "the assets *and the real estate* were sufficient in amount, as I have heretofore found, to pay all debts and the legacies provided in the will. Hence I adjudge the recovery against the defendant personally and as executor." This plainly shows that the Circuit judge in that case regarded the real estate liable to the payment of the legacies, and in effect so decreed. In appealing from that decree the executor, Samuel R. Moore, who was then the sole owner of the residue of the real estate, took no exception to such ruling, based upon any alleged error in holding the real estate chargeable with the legacies; and the Supreme Court in rendering its judgment, after modifying the account in some particulars, not material to the present issue, uses this language: "How the accounts will stand after these modifications, it will be for the Circuit Court to ascertain, and until that is done, it is impossible to say whether the decree should be against the executor personally as well as in his representative character. If it shall appear that assets of the estate of the testator, *including therein the real estate,* and excluding the value of the slaves, have come, or ought to have come, into the hands of the executor, sufficient to enable him to pay the debts *and the legacies,* then the decree should be

against him personally, as well as in his representative character."
This was a plain recognition and affirmation of the ruling of the
Circuit judge that the real estate constituted assets for the pay-
ment of the legacies, as well as the debts.

Again, when the accounting thus ordered by the Supreme
Court was taken, in which the real estate was charged as part of
the assets, and when the result of such accounting was, with cer-
tain modifications, not material to the present inquiry, confirmed
by the decree of Judge Aldrich, from which there was no appeal,
it seems to us that the question was concluded. S. R. Moore
not only then had the opportunity, but it was his duty, to have
raised the question now raised, and not having done so then, he
is estopped from doing so now. If the position now taken—that
the real estate is not chargeable with the legacies—could have
been maintained, it is manifest that no decree could have been
rendered by Judge Aldrich in favor of Davidson and wife and
Fickling and wife against S. R. Moore individually, for unless
the real estate was charged as part of the assets, the balance
would have been in his favor. The decree of Judge Aldrich,
therefore, must necessarily have been based upon the theory that
the real estate was chargeable with the legacies, and as there was
no appeal from that decree, the question was finally determined,
at least so far as the parties to that case are concerned.

It is true that none of the plaintiffs in the present case, except
Samuel R. Moore, were parties to that case, but they are claim-
ing here solely through S. R. Moore, and if he is estopped, they
are so too. They can only claim whatever rights S. R. Moore
may have, and as it has been already adjudged, by a court of com-
petent jurisdiction, in a proper proceeding, that his rights are
subordinate to those of the appellants, they can take in this pro-
ceeding nothing more than the rights so adjudged to S. R. Moore.

2nd. Respondents contend that, even if it be conceded that
the legacies constitute a charge upon the real estate devised
by the residuary clause of the will, yet that S. R. Moore hav-
ing been charged in the accounting with the full value of the
real estate, he has been made to pay the estate of John S.
Moore the full value thereof, and has thus acquired an absolute
right thereto freed from the charge of the legacies. We do not

see how this position can be maintained. The main object of the accounting was to ascertain whether sufficient assets had gone into the hands of the executor to enable him to pay the debts and legacies, and the fact that the value of such assets, including the real estate, has been charged in the account against the executor certainly does not constitute him a purchaser of such assets until he has paid the debts and legacies chargeable thereon. Under the terms of the will, as we have construed it, he had no claim upon any of the assets until all of the debts and legacies were paid; and as the account shows that a sufficient amount of assets did go into his hands to pay both debts and legacies, it is quite clear that such assets in his hands are liable to pay whatever balances have been found due the legatees, before any portion thereof can be claimed by him as his individual property.

Finally, it is contended that S. R. Moore, the executor, upon the principle of subrogation, is entitled first to be reimbursed the amounts advanced by him in paying the debts of the testator, before the legatees can claim anything. Without questioning the legal principle upon which this position is based, it appears to us to be without any foundation in fact. There is not only no proof that the executor has advanced from his own funds money to pay the debts of the testator, but the proof is conclusive the other way. On the accounting a *devastavit* has been fixed upon him, as is conclusively shown by the fact that the decree is against him not only as executor, but individually, and how, under these circumstances, he can claim to be in advance of the estate we are at a loss to conceive. If he was in advance of the estate then, clearly no decree should have gone against him individually; and the fact that such a decree has been rendered against him, from which there was no appeal, is conclusive of the fact that he could not be in advance of the estate.

The judgment of this court is that the judgment of the Circuit Court be reversed and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.